UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MANUEL BAEZ,<br><br>                    Plaintiff<br><br>          v.<br><br>CO DAVIS, *et al.*,<br><br>                    Defendants. | CIVIL ACTION NO. 3:24-CV-02070<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Plaintiff Manuel Baez, previously incarcerated at SCI-Rockview, proceeds on Eighth Amendment claims against defendants CO Davis and CO Mackenzie under 42 U.S.C. § 1983. He alleges that these officers were deliberately indifferent to his safety when they allowed him to possess a razor despite his "razor restriction," and that he used this razor to deliberately cut himself in the shower. All parties have now moved for summary judgment. *See* (Doc. 26, Doc. 50). Because the record, consisting mainly of the parties' affidavits, does not establish any party's entitlement to summary judgment, the motions will be denied.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

On December 2, 2024, the Court received and docketed Baez's complaint (Doc. 1). In brief, the complaint alleges as follows: On August 21, 2024, Baez was incarcerated on "G-Block" at SCI-Rockview. Baez has been on a permanent razor restriction since 2017, for what he describes as "a chronic history of suicide attempts and self-harm." At 4:30 p.m., Davis and Mackenzie opened Baez's cell door to escort him to the shower. Davis told Baez that the unit manager, Mr. Miller, wanted to get Baez "out of the way" because of a lawsuit Baez filed against Miller's "friends." Davis allegedly told Mackenzie to "get that razor for Baez so he

can kill himself." While in the shower, Baez, "already stressed out" from other disputes with staff, intentionally cut himself in the leg with the razor, requiring 23 stitches.

On January 13, 2025, the Court granted Baez's motion for leave to proceed *in forma pauperis*, and dismissed several of his claims pursuant to 28 U.S.C. § 1915A, but permitted him to proceed on Eighth Amendment claims against Davis and Mackenzie premised on their alleged deliberate indifference to a substantial risk of serious harm. *See* (Doc. 8, Doc. 9).

Prior to the close of discovery, the defendants filed what they styled as a "Motion for Judgment on the Pleadings," seeking entry of judgment based on their own affidavits. (Doc. 26). The Court converted this motion to a motion for summary judgment and directed Baez to respond accordingly. *See* (Doc. 29; Fed. R. Civ. P. 12(d)). Baez has now filed a document entitled "Summary Judgment Supporting Factual Positions" (Doc. 50), with an accompanying "Summary Judgment Brief Against[] All Defendants." (Doc. 51). Baez has filed two letters clarifying that he intended these filings to serve as his opposition to Defendants' motion. *See* (Doc. 55, Doc. 56).

II.     **LEGAL STANDARDS**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the

non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. See *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389

3

n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment."). With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Summary judgment procedures are further governed by Local Rule 56.1, which requires the moving and the responding parties to file statements of material facts. *See* M.D. Pa. L.R. 56.1. However, because Defendants' motion was initially filed as a request for judgment on the pleadings, neither party submitted the separate, compliant statement of facts contemplated by the local rules. Therefore, in assessing the summary judgment record, the Court will consider all evidence submitted by the parties, including Baez's verified complaint[1]. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *see also United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000) (a district court has discretion "to waive a requirement of its local rules in appropriate circumstances").

### III. MATERIAL FACTS

Applying these standards to the instant case, the summary judgment record indicates as follows: Within the Pennsylvania Department of Corrections ("DOC"), Baez has been on a "permanent razor restriction" since 2017, due to his "chronic history of suicide attempts

---

[1] *See* (Doc. 1); *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 100 n.1 (3d Cir. 2017) ("[W]e consider as affidavits [the plaintiffs'] sworn verified complaints, to the extent that they are based upon personal knowledge and set out facts that would be admissible in evidence."); Fed. R. Civ. P. 56(c)(4).

4

and self-harm." *See* (Doc. 50-1 at 2). On August 21, 2024, Baez was incarcerated in the Behavioral Management Unit ("BMU") at SCI-Rockview.[2] If an inmate in the BMU is on a razor restriction, that decision is generally "communicated to the Corrections Officers by the Unit Manager." Inmates in the BMU who are not on razor restrictions are permitted to keep razors outside of their cells in individually assigned containers. At 4:30 p.m. on August 21, Defendants Davis and Mackenzie escorted Baez to the shower. It is undisputed that Baez's individual container had a razor, that the officers permitted Baez to have this razor, and that Baez's behavior during this interaction did not "suggest . . . he would use his razor to harm himself or others." *See* (Doc. 27-1, Doc. 27-2).

However, the parties dispute the circumstances under which Baez obtained the razor. Baez contends that Davis told him the unit manager, Mr. Miller, wanted to get Baez "out of the way" because of a lawsuit Baez filed against Miller's "friends"; and that Davis told Mackenzie to "get that razor for Baez so he can kill himself." Davis and Mackenzie, by their own affidavits, contend that the unit manager had not told them Baez was on a razor restriction, and they did not "understand or believe" that Baez had such a restriction.

While in the shower, Baez intentionally cut his leg with a razor. When the officers returned to the shower and discovered Baez's injury, they sought immediate medical attention for Baez. Baez was ultimately transferred to a hospital and received 23 stitches on his leg.

---

[2] The Court takes judicial notice that within the DOC, a Behavioral Management Unit is "a secure diversionary unit for mentally ill individuals who . . . require a secure setting due to their demonstrated problematic behavior in less secure environments." *See* DOC Policy Statement 13.8.1, Access to Mental Health Care Procedures Manual, § 12.A.1 (available at https://www.pa.gov/agencies/cor/about-us/doc-policies) (last accessed Jan. 21, 2026).

5

**IV.    DISCUSSION**

To establish an Eighth Amendment claim based on failure to protect from self-harm, a prisoner must show that he was incarcerated under conditions posing a substantial risk of serious harm, and the official was deliberately indifferent to that substantial risk. *See Hayes v. Gilmore*, 802 F. App'x 84, 89 (3d Cir. 2020) (citing *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012)). Under the deliberate indifference standard, the official "must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). A non-medical officer who knowingly fails to enforce an inmate's razor restriction may demonstrate deliberate indifference. *See, e.g.*, *Garcia v. Foulds*, No. 1:21-CV-138, 2022 WL 21769875, at *6 (M.D. Pa. Mar. 14, 2022), report and recommendation adopted, 2022 WL 21769856 (M.D. Pa. Apr. 15, 2022).

In this case, the limited record does not permit summary judgment for any party, based on the genuine dispute established by the parties' competing affidavits. When a non-movant attempts to defeat summary judgment through their own testimony, courts consider whether that testimony, "juxtaposed with the other evidence, is sufficient for a rational factfinder to credit despite its self-serving nature." *Hricenak v. Mickey Truck Bodies*, No. 4:21-CV-00694, 2024 WL 1604650, at *2 (M.D. Pa. Apr. 12, 2024) (citations omitted); *Whitnum v. Meadows at Stroud for Nursing & Rehab., LLC*, No. 3:18-CV-02137, 2020 WL 7773906, at *4 (M.D. Pa. Dec. 30, 2020); *see also Losch v. Borough of Parkesburg, Pa.,* 736 F.2d 903, 909 (3d Cir. 1984) ("While summary judgment may be based on affidavits, conflicts of credibility should not be resolved . . . unless the opponent's evidence is too incredible to be believed by reasonable minds.") (quotation omitted).

6

Here, Defendants have not presented the "other evidence" that would be necessary to disregard Baez's verified allegations that they provided him a razor with the belief that he may try to harm himself. *See Doe v. Pennsylvania State Univ.*, No. 4:21-CV-01862, 2023 WL 7287217, at *5 (M.D. Pa. Nov. 3, 2023) (where "the bulk of the 'other evidence' are deposition testimony and affidavits," the court cannot disregard the plaintiff's self-serving testimony in favor of the defendant's); *see also Coit v. Luther*, No. 1:19-CV-02036, 2021 WL 5792697, at *14-15 (M.D. Pa. Dec. 7, 2021) (witness declaration from an alleged "serial frivolous lawsuit filer" supported a genuine issue of fact as to whether an inmate was encouraged to attempt suicide; courts "cannot partake in . . . a credibility assessment at the summary judgment stage").

Defendants rely in part on the fact Baez had a razor in his personal-effects container, suggesting that he was not on a razor restriction. However, it does not follow that this was the appropriate way for officers to confirm an inmate's razor status, nor can that be assumed in the movant's favor at the summary judgment stage. *See* (Doc. 50 at 1) (arguing that defendants' "office and group room [has] a giant board with everyone's . . . restrictions"). Baez's verified complaint indicates that he has been on a razor restriction since 2017. On this limited record, a jury could reasonably infer that officers assigned to deal with inmates in the BMU, where Baez was located, would know of Baez's longstanding razor restriction.[3]

---

[3] The DOC's response to Baez's grievance indicates that "no one knew [Baez was] on a razor ban because it was generated at a different facility," (Doc. 1-1 at 2), but it remains unclear why a "permanent" razor restriction "generated at a different facility" would not be recognized at the SCI-Rockview BMU, a unit that was intended to accommodate mentally ill inmates with such restrictions. Given that Baez had been on a continual razor restriction for years, this vague explanation is not sufficient to disregard Baez's attestations.

7

To the extent Baez intended to request summary judgment in his favor, that request must also be denied. Beyond his affidavits, Baez presents no other evidence[4] that the officers knowingly provided Baez a razor "so he [could] kill himself" or that they deliberately (rather than negligently) ignored his razor restriction. The parties' competing affidavits raise genuine disputes of material fact, so no party is entitled to summary judgment.

## V.    CONCLUSION

For the foregoing reasons, the Court will deny the parties' requests for summary judgment. An appropriate order follows.

Dated: January 23, 2026            *s/ Karoline Mehalchick*
                                                    **KAROLINE MEHALCHICK**
                                                    **United States District Judge**

---

[4] Baez has submitted prison grievance records, documents addressing his medical history prior to 2018, and portions of DOC policies that address the provision of mental health care. *See* (Doc. 1-1, Doc. 1-2, Doc. 50 at 6-10). None of these documents demonstrate these particular defendants' knowledge of his razor restriction on August 21, 2024.